# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

FELICIA F. BROWN,

Plaintiff,

-vs-                                            Case No.  6:04-cv-422-Orl-JGG

JO ANNE B. BARNHART,
**Commissioner of Social Security,**

Defendant.
_____

# MEMORANDUM OF DECISION

Plaintiff Felicia F. Brown ["Brown"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her application for a period of disability and disability insurance benefits.  *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY

On June 26, 2001, Brown protectively filed a claim for supplemental security income payments, claiming disability as of March 1, 2001.  R. 55-58.  On July 16, 2003, the Honorable Philemina M. Jones, Administrative Law Judge ["ALJ"], held a hearing on Brown's claim in Orlando, Florida.  Brown testified, and her attorney, Michael Matthews, appeared with her at the hearing.  The ALJ also heard testimony from Vocational Expert ["VE"] Robert San Filippo.  R. 181-213.

On October 24, 2003, the ALJ ruled that Brown was not entitled to benefits.  R. 8-18.  Following a review of the medical and other record evidence, the ALJ found that although Brown

-1-

had severe impairments, she did not have an impairment or combination of impairments that met or equaled a listed impairment.  R. 17, Findings 2-3.  The ALJ also found that Brown's testimony regarding her limitations were not totally credible.  R. 17, Finding 4.  Further, the ALJ determined that Brown retained the RFC to perform a significant range of sedentary work.[1]  R. 17, Findings 6, 11.

The ALJ determined that Brown could not return to her past relevant work, R. 17, Finding 7, so the burden shifted to the Commissioner.  The ALJ relied on Medical-Vocational Rule 201.25 as a framework for decision making, as well as on the VE testimony, and determined that Brown could perform a significant number of other jobs that existed in the national economy.  R. 17, Finding 12.  Accordingly, the ALJ concluded that Brown was not disabled.  R. 18, Finding 13.

On October 27, 2003, Brown appealed the ALJ's decision to the Appeals Council.  R. 5-7.  Finding no error, the Appeals Council denied review on January 29, 2004.  R. 2 - 4.  On March 26, 2004, Brown timely appealed the Appeals Council's decision to the United States District Court for the Middle District of Florida.  Docket No. 1.  On November 8, 2004, Brown filed a memorandum of law in support of her appeal of the denial of review.  Docket No. 23.  On January 7, 2005, the Commissioner filed a memorandum in support of her decision that Brown was not disabled.  Docket No. 25.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Brown assigns five errors to the Commissioner: 1.) formulating a hypothetical question that was not supported by substantial evidence; 2.) failing to fully develop the record concerning

---

[1]"Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §416.967(a).

Brown's carpal tunnel syndrome; 3.) improperly evaluating Brown's obesity; 4.) disregarding Brown's subjective complaints of pain; and 5.) failing to consider Brown's combination of impairments.  Pl.'s Brief at 5 - 13.

The Commissioner responds that her decision was supported by substantial evidence and was decided by proper legal standards.  The Commissioner asserts that: 1.) substantial evidence supported the hypothetical question; 2.) the ALJ properly evaluated Russo's carpal tunnel syndrome; 3.) the ALJ properly evaluated Brown's obesity; 4.) substantial evidence did not support Russo's allegations of disabling pain; and 5.) the ALJ properly considered Russo's combination of impairments.  Def.'s Brief at 3 - 17.

## III.   **THE STANDARD OF REVIEW**

### A.   **Affirmance**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th

Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B.      Reversal and Remand

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the

disability claim.  *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a

full and fair record of claimant's residual functional capacity); *accord Brenem v. Harris*, 621 F.2d

688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was

insufficient for district court to find claimant disabled).

    Where the district court cannot discern the basis for the Commissioner's decision, a

sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his

decision.  *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to

allow ALJ to explain his basis for determining that claimant's depression did not significantly

affect her ability to work) (treating psychologist acknowledged that claimant had improved in

response to treatment and could work in a supportive, non-competitive, tailor-made work

environment).  On remand under sentence four, the ALJ should review the case on a complete

record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir.

1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council);

*Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the

need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and

appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

    In contrast, sentence six of 42 U.S.C. § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the
> Commissioner of Social Security, but only upon a showing that there is new
> evidence which is material and that there is good cause for the failure to
> incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405 (g).  To remand under sentence six, the claimant must establish:  1.) that there is

new, non-cumulative evidence; 2.) that the evidence is material —  relevant and probative so that

there is a reasonable possibility that it would change the administrative result; and 3.) there is

good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at

1090 - 92;  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d

1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*

*Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the

Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at

1095.  With a sentence-six remand, the parties must return to the district court after remand to

filemodified findings of fact.  *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction

pending remand, and does not enter a final judgment until after the completion of remand

proceedings.  *Id*.

## IV.   **THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416 (i), 423 (d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe,

making the claimant unable to do his or her previous work, or any other substantial gainful

activity which exists in the national economy.  42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 -

404.1511.

### A.   **Treating Physicians**

Substantial weight must be given to the opinion, diagnosis and medical evidence of a

treating physician unless there is good cause to do otherwise.  *See Lewis v.* Callahan, 125 F.3d

1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991);

*Sabo v. Commissioner of Social Security*, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. §

404.1527 (d).  If a treating physician's opinion on the nature and severity of a claimant's

impairments is well-supported by medically acceptable clinical and laboratory diagnostic

techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must

give it controlling weight.  20 C.F.R. § 404.1527 (d)(2).  The ALJ may discount a treating

physician's opinion or report regarding an inability to work if it is unsupported by objective

medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted

treating physician's report where the physician was unsure of the accuracy of his findings and

statements).

Where a treating physician has merely made conclusory statements, the ALJ may afford

them such weight as is supported by clinical or laboratory findings and other consistent evidence

of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see

also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion

does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based

on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and

extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.)

consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other

factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527 (d).  However, a

treating physician's opinion is generally entitled to more weight than a consulting physician's

opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527

(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527 (e).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner.  20 C.F.R. § 404.1527 (e).

### B.   Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Cowart*, 662 F.2d at 735 (citations omitted).

**C.**     **Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

**D.**     **The Five Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520 (b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520 (c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520 (d).  Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520 (e).  Fifth, if a claimant's impairments (considering his or her

residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled. 20 C.F.R. § 404.1520 (f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423 (d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See id.*, 985 F.2d at 534.

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The claimant must prove disability on or before the last day of his or her insured status for the purposes of disability benefits. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416 (i)(3); 423(a), ©). If a claimant becomes disabled after the claimant has lost insured status, his or her claim for disability benefits must be denied despite the disability. *See, e. g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

### E.      Other Work

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In

-10-

determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide

range of employment at the given work capacity level indicated by the exertional limitations.

*Foote*, 67 F.3d at 1559.

### 1.     <u>Pain</u>

Pain is a non-exertional impairment.  *Foote*, 67 F.3d at 1559; 826 F.2d at 1003.  Congress

has determined that a claimant will not be considered disabled unless he furnishes medical and

other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical

impairment which could reasonably be expected to produce the pain or symptoms alleged.  42

U.S.C. § 423 (d)(5)(A).  The ALJ must consider all of a claimant's statements about his

symptoms, including pain, and determine the extent to which the symptoms can reasonably be

accepted as consistent with the objective medical evidence.   20 C.F.R. § 404.1528.  In

determining whether the medical signs and laboratory findings show medical impairments which

reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh

Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and
> either (2) objective medical evidence that confirms the severity of the alleged pain
> arising from that condition or (3) that the objectively determined medical condition
> is of such a severity that it can be reasonably expected to give rise to the alleged
> pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain

alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v.*

*Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not,

by itself, conclusive of disability.  42 U.S.C. § 423 (d)(5)(A).

2.      **Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Foote,* 67 F.3d at 1561-62*; Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

V.      **APPLICATION AND ANALYSIS**

A.      **The Facts**

Born on November 21, 1970, Brown was thirty-two years old at the time of the ALJ's decision.[2] R. 18, 55. Brown has an eleventh-grade education. She has past work experience as a cashier. R. 189-90. Brown claims an inability to work beginning March 1, 2000. R. 55.

On January 5, 1998, Brown went to Florida Hospital for complaints of chest pain that lasted for two days. Brown stated that the pain worsened with movement, lifting, and deep breathing. The diagnosis was chest pain. Radiological studies of the chest showed markings at the right lung base that had increased subtly from a prior study in August 1994. There was no obvious infiltrate or effusion, and Brown's heart and mediastinum were stable. The impression was patchy right lower lobe infiltrate. R. 125-28.

On January 25, 1999, Brown went to Randolph Medical Associates with complaints of difficulty breathing, back pain, and knee pain. The assessments were history of asthma, arthritis, and anemia. R. 129-30. On April 27, 1999, Brown returned for complaints of low back pain and numbness in the right arm and hand. The diagnoses were osteoarthritis and urinary urgency. R. 130. Brown returned on May 19, 1999, for left hip pain. The left hip was tender to palpation. There was discomfort noted with range of motion. Pulses were +1 bilateral leg extensions. Brown's lungs exhibited coarse breathing sounds. The assessments were osteoarthritis, history of asthma and anemia, and obesity. R. 131.

On July 26, 1999, Brown returned to Randolph Medical Associates for weight control. She weighed 318 pounds and her height was 61 inches. Her BMI was 61. The diagnoses were

---

[2] She is now thirty-four years old.

-14-

obesity, asthma, osteoarthritis, and anemia by history.  The physician advised Brown to follow a diet of 1500 calories per day, and to exercise for thirty minutes, four times per week.  R. 132.

On September 30, 1999, Brown went to the emergency room with complaints of dizziness, nervousness, cold sweats, and a severe, sudden onset of frontal headaches.  The diagnoses were vertigo and sinusitis.  A CT scan of the brain showed no intracranial abnormalities and scattered ethmoid sinus disease.  The treating physician noted that Brown could return to full-time work by October 4, 1999.  R. 114-22.

On September 25, 2001, Brown went to Phoebe Medical Center for complaints of back and abdominal pain.  R. 167.  On September 27, 2001, Brown went to Health Central for complaints of abdominal pain, chest pain, and hypertension.  Radiological scans of the chest showed no lung disease.  Radiological scans of the abdomen showed no abnormality of the bowel gas pattern.  R. 170.

On October 2, 2001, Brown went to Sam Ranganathan, M.D., for a consultative disability exam.  She complained of low back pain that radiated into the posterior aspect of the right lower extremity.  Brown also complained of bladder urgency, inability to control her bowels, pain in the feet, heels and knees, and sore hands.  Examination showed decreased range of motion of forward flexion of the thoracolumbar spine (Brown's maximum flexion was 65 degrees, compared with 90 degrees for a normal person).  Knee flexion was limited to 140 degrees, compared with 150 degrees for a normal person.  X-rays of the right foot showed no fracture or dislocation, but mild calcaneal spur.  X-rays of the lumbosacral spine showed no fracture, dislocation, or spondylolisthesis.  The diagnosis was morbid obesity, history of bronchial asthma, and lumbosacral sprain.  Dr. Ranganathan opined that Brown retained an RFC sufficient to sit, stand,

and walk for six hours, lift and carry twenty pounds occasionally, ten pounds frequently.  He

further stated that due to obesity, Brown would have frequent postural limitations, occasional

workplace environmental limitations, height limitations, and driving limitations.  However, he

noted that Brown had no manipulative limitations.  R. 133-36.

On October 22, 2001, state agency physician Violet A. Stone, M.D., completed a Physical

Residual Functional Capacity Assessment.  Dr. Stone found that Brown could lift/carry twenty

pounds occasionally, ten pounds frequently, sit, stand, and walk for six hours, and had no other

exertional limitations.  She also found that due to obesity, Brown could occasionally climb, stoop,

and crouch, but otherwise had no postural limitations.  In all other respects, Brown had no

limitations.  Dr. Stone noted that Brown was 67 inches tall and weighed 339 pounds.  Dr. Stone

stated that Brown was morbidly obese, and surmised that her complaints of back pain were due to

lumbar strain.  However, Dr. Stone noted that her spinal x-rays were unremarkable, and that there

was no evidence of significant exacerbation of her pain during the past year.  R. 138-45.

On January 23, 2002, state agency physician M. de la Cerna, M.D., completed a Physical

Residual Functional Capacity Assessment.  Dr. de la Cerna found that Brown could lift/carry

twenty pounds occasionally, ten pounds frequently, sit, stand, and walk for six hours, but had no

other exertional limitations.  He also found that due to obesity, Brown could occasionally climb,

balance, stoop, kneel, crouch, and crawl.  In all other respects, Brown had no limitations.  Dr. de la

Cerna concluded that Brown's only problem was obesity, and that all of her exams were normal.

R. 146-53.

On May 30, 2002, Brown went to Phoebe Medical Center for complaints of shortness of

breath.  Examination showed that her lungs were clear.  R. 165.

On December 18, 2002, Brown returned to Phoebe Medical Center for complaints of a rash.  Upon examination, she stated that she had pain in her fingers.  Examination was normal.  The assessments were new onset hypertension, Type II diabetes uncontrolled, contact dermatitis, and new onset heart murmur.  Treatment comprised medication.  Brown returned on December 31, 2002, for a follow-up visit.  She had no complaints.  R. 160-62.

On January 2, 2003, Brown underwent an echocardiogram.  Brown's height was 62 inches, and she weighed 330 pounds.  Her left ventricle ejection fraction was 60%.  There was left atrial enlargement with 1+ atrial regurgitation, and possible bicuspid aortic valve with calcification of leaflets.  A Doppler-derived mean pressure gradient was consistent with significant aortic stenosis.  There was no significant aortic regurgitation.  R. 154-55.

On January 23, 2003, Brown went to Phoebe Medical Center.  She coughed violently during the exam and vomited due to coughing.  Examination showed a systolic murmur, three over six.  Her extremities were mild plus one edema.  Brown's lungs were clear.  The assessment was uncontrolled hypertension, Type II diabetes, and persistent cough — rule out CHF.  The physician ordered a chest x-ray and a cardiology consultation for her bicuspid aortic valve.  R. 180.

On March 4, 2003, Brown returned to Phoebe Medical Center complaining of wrist pain and numbness.  Examination revealed no swelling of the wrists, but did show a positive Tinel's sign.  The assessment was carpal tunnel syndrome, Type II diabetes well-controlled, and hypertension.  Treatment comprised medication and a referral for bicuspid aortic valve.  R. 178-79.

Brown underwent an echocardiogram on March 18, 2003.  The left ventricle ejection fraction was 65%.  The aortic valve was bicuspid with some calcification.  A Doppler study revealed mild to moderate mitral regurgitation.  The impression was bicuspid aortic valve with

-17-

calcification, but no aortic stenosis, and mild to moderate mitral regurgitation.  The aortic valve area was within normal limits.  R. 172.

On March 25, 2003, Brown returned to Phoebe Medical Center for complaints of continuing wrist pain and sleeplessness.  Examination showed tenderness upon palpatation of the volar aspect of the wrist, consistent with a positive Tinel's sign.  The assessment was Type II diabetes controlled, hypertension uncontrolled, and carpal tunnel syndrome.  The physician referred Brown to an orthopedic surgeon for possible surgical treatment of her wrist, and advised Brown to continue use of her wrist splints.  R. 177.

Brown returned to Phoebe Medical Center on April 21, 2003, with complaints of swelling in the left leg and a rash.  Brown stated that she had visited the emergency room on March 4, 2003, and a physician had advised her to use crutches and avoid weight bearing until an orthopedic evaluation.  The physician noted that Brown was obese and poorly conditioned.  She had a slight heart murmur and mitral regurgitation.  Brown did not complain of pain.  The assessment was scabies with extreme utircaria.  Brown was encouraged to see an orthopedist.  R. 175.

On May 14, 2003, Brown returned to Phoebe Family Medical Center for complaints of knee pain.  She had a history of diabetes and complained of left knee pain.  The diagnosis was uncontrolled hypertension and Type II diabetes under fair control.  R. 174.

**B.**     <u>**The Analysis**</u>

     **1.**     **The ALJ Properly Developed the Record Concerning Brown's Carpal Tunnel Syndrome**

Brown argues that the ALJ failed to order a consultative examination to confirm the extent of Brown's carpal tunnel syndrome.  The Court disagrees.  The record contained sufficient evidence regarding Brown's impairments for the ALJ to render her decision.  Brown bears the ultimate burden of proving disability, and failed to furnish medical and other evidence sufficient to show functional limitations due to carpal tunnel syndrome.  Brown was represented by an attorney.

There is minimal medical evidence reflecting treatment of Brown's hand-related symptoms.  The relevant evidence comprises medical records from about January 1999 through May 2003.  During this 53-month period, however, Brown complained of hand-related symptoms on only five occasions.  Brown's first complaint (numbness in her right hand and arm) was in April 1999.  The diagnosis was osteoarthritis.  Treatment was conservative, comprising only medication.  R. 130, 132.  Her next complaint (sore hands) was in October 2001, during a one-time consultative examination by Dr. Ranganathan.  Dr. Ranganathan observed that Brown's gross and fine manipulations were well preserved, her hand grip was 5/5 bilaterally, and she had no manipulative limitations.  R. 134.   In October 2001 and January 2002, two state agency physicians opined that Plaintiff could perform light work with occasional postural limitations, but they noted no manipulative limitations.  R. 141, 149.

In December 2002, Brown complained to her treating physician of pain in her fingers.  However, physical examination was unremarkable.  R. 161-62.  On March 4, 2003, Brown complained of wrist pain and numbness.  Brown's treating physician noted no wrist swelling, but

-19-

did note a positive Tinel's sign.  The diagnosis was carpal tunnel syndrome.  She was advised to continue use of her wrist splints and referred to an orthopedic surgeon for possible treatment. R. 177-78.  On March 25, 2003, Brown complained to her treating physician of continuing wrist pain.  The assessment was carpal tunnel syndrome, and Brown received a referral to an orthopedic surgeon.  Treatment was the use of a wrist splint.  R. 177.  In subsequent visits to her treating physician in April and May, 2003, Brown did not note any wrist-related symptoms.  The medical evidence does not show disabling functional limitations of the hand.

Brown's testimony at the hearing also fails to support functional limitations due to carpal tunnel syndrome.  Significantly, in response to her attorney's question ("And as far as your upper extremities and your hands, do you have any problems with them?"), Brown stated, "No.  They cramp up on me sometimes, my hands."  R. 199.  Brown further testified that her medication relieves her hand symptoms, and that she drives, cooks, separates laundry, and dresses herself. Finally, Brown stated that she only has problems lifting heavy objects with her right hand.  R. 189, 200-03.

Thus, the evidence as a whole shows no functional limitations related to Brown's carpal tunnel syndrome.  The medical evidence reflects merely sporadic complaints of wrist, hand, and finger pain.  Although Brown's treating physician diagnosed Brown with carpal tunnel syndrome, treatment was conservative, comprising merely the use of wrist splints.  In addition, two state agency physicians and a consultative examining physician found no manipulative limitations. Brown herself concedes that her only hand-related problems are occasional cramping, and that there is a "lack of objective evidence regarding the extent of Plaintiff's carpal tunnel syndrome."

-20-

Pl.'s Brief at 9.  Finally, Brown's activities of daily living are not consistent with disabling functional limitations.

Although the ALJ did not find Brown's carpal tunnel syndrome to be a severe impairment and failed to indicate that Brown was ever diagnosed with carpal tunnel syndrome, it is obvious that the ALJ considered the evidence.  At the hearing, she asked Brown about her hand symptoms, and noted in her decision that Brown experienced pain in her hands.  In addition, the ALJ disregarded, in part, the opinions of the state agency physicians and Dr. Ranganathan that Brown could perform light work.  Instead, the ALJ found that Brown could perform a reduced range of sedentary work.  Presumably, the ALJ downgraded Brown's RFC due, in part, to her hand-related symptoms.  The record contained sufficient evidence regarding Brown's impairments for the ALJ to render her decision.  Therefore, the ALJ was not required to order a consultative examination.

### 2.      Substantial Evidence Supports the ALJ's Hypothetical Questions

Brown next asserts that the ALJ posed to the VE incomplete hypothetical questions.  More specifically, Brown urges that the ALJ failed to include limitations regarding Brown's use of her hands due to carpal tunnel syndrome and osteoarthritis.  However, as established above, the evidence does not support any functional limitations due to carpal tunnel syndrome.  Therefore, the ALJ was not required to include any such limitations in her hypotheticals.  Brown does not challenge the sufficiency of the hypothetical questions in any other respects, and this Court does not address issues not raised on appeal.

### 3.      The ALJ Properly Evaluated Brown's Subjective Complaints of Pain

Brown argues that the ALJ failed to properly evaluate her subjective complaints of pain in her chest, hip, knee, back, and hand.   The Court disagrees, as the evidence fails to show a serious

underlying medical condition that could reasonably be expected to give rise to Brown's alleged pain.

The evidence establishes that Brown suffers from asthma, hypertension, lumbosacral sprain, obesity, diabetes, and mitral regurgitation.  However, substantial evidence does not support Brown's allegations of totally disabling pain.  Brown has never required periods of hospitalization or emergency room treatment.  In fact, the record reflects minimal symptoms or treatment.  Chest x-rays taken in January 1998 and September 2001 showed no lung disease.  R. 125-28, 170.  In October 2001, Dr. Ranganathan found no evidence of venous insufficiency or peripheral arterial disease.  R. 134.  In May 2002 and January 2003, Brown's treating physician found that Brown's lungs were clear.  R. 165, 180.  Echocardiograms performed in January and May 2003 showed no aortic stenosis, mild left atrial enlargement, bicuspid aortic valve with some calcification, and mild to moderate mitral regurgitation.  R. 154-55, 172-73.  Regarding Brown's back pain, Brown was diagnosed with osteoarthritis in April 1999.  R. 130.  However, in October 2001, Dr. Ranganathan found only a slightly decreased range of motion in her thorocolumbar spine.  R. 135.  X-rays of the lumbosacral spine showed no fracture, dislocation, or spondylolisthesis.  R. 133-36.  Similarly, radiological scans of Brown's foot and brain showed no abnormalities.  R. 114-22, 133-36.  Brown had only a slightly decreased range of motion in her knee.  R. 133-36.

At the hearing, Brown testified that she is unable to sit or stand for extended periods of time due to back and leg pain, and could not walk even one block due to shortness of breath.  R. 193-94, 98.  Citing an absence of supporting clinical evidence and laboratory findings, the ALJ found Brown's testimony of disabling pain not fully credible.  However, the ALJ accorded little weight to the opinions of the state agency physicians or Dr. Ranganathan, who determined that

Brown retained an RFC for light work.  Noting Brown's obesity, knee and back pain, and

shortness of breath, the ALJ found that Brown had an RFC for a significant range of sedentary

work.  Thus, the ALJ properly evaluated Brown's pain and articulated specific and adequate

reasons for discrediting Brown's testimony about totally disabling pain.

>         4.      **The ALJ Properly Evaluated Brown's Obesity and Combination of Impairments**

Finally, Brown contends that the ALJ failed to properly evaluate Brown's obesity, and did

not consider her impairments in combination.  This argument is wrong.  The ALJ clearly

incorporated Brown's combination of impairments into her determination of Brown's RFC.  The

ALJ determined that Brown had severe impairments, including: asthma, hypertension,

lumbosacral sprain, obesity, diabetes, and mitral regurgitation.  Citing Brown's obesity, knee and

back pain, and shortness of breath, the ALJ rejected as "somewhat optimistic" the opinions of the

state agency physicians and Dr. Ranganathan that Brown could perform light work.  Instead, the

ALJ applied the impact of Brown's impairments and concluded that Brown could perform only a

reduced range of sedentary work.  More specifically, the ALJ rejected the foregoing physicians'

findings concerning Brown's exertional, postural, and environmental limitations.  The ALJ

determined that Brown retained an RFC to lift ten pounds occasionally, frequently lift less than ten

pounds, sit for six hours, stand/walk for two hours, could never climb ladders, ropes, or scaffolds,

could occasionally balance, stoop, kneel, crouch or crawl, and should avoid concentrated exposure

to fumes, odors, gases, and poor ventilation.  Plainly, the ALJ incorporated Brown's combination

of impairments into her RFC determination.

## VI.    **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**.  The

Clerk should enter a judgment.

**DONE AND ORDERED** this 26th day of April, 2005.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and *Pro Se* Litigants,
and to:

Mary Ann Sloan, Chief Counsel
Dennis R.  Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL            33602

The Honorable Philemina M. Jones
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL            32817